IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEVIN W. MALONE,

                Petitioner,

    v.

STATE OF NEBRASKA, and SCOTT R. FRAKES, Director of the Nebraska Department of Correctional Services,

                Respondents.

**8:21CV432**

**MEMORANDUM
AND ORDER**

      This matter is before the Court on petitioner Kevin W. Malone's ("Malone") Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Filing No. 1). Malone is an inmate within the Nebraska Department of Correctional Services, and Scott R. Frakes is the department's director.

      Respondents filed the state court records (Filing No. 6), and an Answer and supporting brief in opposition to Malone's petition (Filing Nos. 7 and 8). Malone then filed a Notice to Intent to Serve a Rule 45 Subpoena on the Clerk of the Douglas County District Court, seeking production of the "Trial audio recording of CR 16-2695 State v. Kevin Malone. Specifically, audio recording starting at 0900 on May 4, 2017, testimony of Mr. Kevin W. Malone." (Filing No. 9). Respondents objected. (Filing No. 10). Malone moved for leave to serve discovery, arguing good cause exists to obtain the audio recording of the trial as a supplement to the state court record. (Filing No. 11). Respondents oppose Malone's motion to serve discovery. (Filing No. 13).

      For the reasons stated below, Malone's petition is denied without allowing discovery, supplementation of the state court record, or an evidentiary hearing. No certificate of appealability shall issue.

I.     **BACKGROUND**[1]

A.     **Facts**

Malone was involved in a vehicular accident in Omaha, Nebraska on August 31, 2016, when the car he was driving collided with a motorcycle driven by Jason Hart. Hart died as a result of the accident.

On March 10, 2017, an amended four-count information was filed against Malone in the District Court of Douglas County, Nebraska, charging him with motor vehicle homicide, a Class II felony (Count I); manslaughter, a Class IIA felony (Count II); leaving the scene of a personal injury accident resulting in serious bodily injury or death, a Class III felony (Count III); and driving without an ignition interlock device, a Class I misdemeanor (Count IV).   (Filing No. 6-20, at CM/ECF pp. 6-7).   Malone's counsel did not move to sever the trial on Count IV from the remaining counts.

Malone's five-day trial began on May 1, 2017.  (Filing No. 6-25, at CM/ECF p. 2). At trial, the prosecution read a stipulation advising the jury that "Kevin Malone, the defendant, was required to operate only motor vehicles equipped with an ignition interlock device based upon a prior order by a Court or of the Nebraska Department of Motor Vehicles on August 31, 2016." (Filing No. 6-25, at CM/ECF p. 186).  The criminal charges underlying the interlock device order—three prior convictions for driving under the influence—were not mentioned at trial.   As relevant to Malone's petition, the following evidence was elicited at trial through witness testimony.

On August 31, 2016, at approximately 7:25 p.m., Malone was driving eastbound on West Center Road in Omaha, Nebraska and pulled into the left-hand turn lane to turn

---

[1]Unless otherwise noted, the background is drawn from the parties' submissions, the Nebraska Court of Appeals opinion in *State v. Malone*, 26 Neb. App. 121, 917 N.W.2d 164 (2018), *review denied* (Sep 28, 2018) (direct appeal), and the Nebraska Supreme Court ("Supreme Court") opinions in *State v. Malone*, 308 Neb. 929, 957 N.W.2d 892, *opinion modified on denial of reh'g*, 309 Neb. 399, 959 N.W.2d 818 (2021) (post-conviction appeal).

north onto 140th Street.  With his traffic light still red, Malone's car turned left and collided with a westbound motorcycle driven by Justin Hart.  Hart applied his brakes and tried to "lay his bike down" to avoid the collision, but he was unsuccessful.  The motorcycle collided with Malone's car and Hart landed face down on the road approximately 6 feet from the collision.

An off-duty paramedic and a respiratory therapist witnessed the accident and began administering CPR.  As they did so, Malone exited his car and walked over to their location.  Although blood was coming out of Hart's mouth with each chest compression, Malone started to perform "mouth-to-mouth." Both the off-duty paramedic and the respiratory therapist told Malone to stop, but he did it a second time.  Malone then wiped off his mouth, slowly stood up, and walked away.  Rescue personnel then transported Hart to the hospital where he was pronounced dead upon arrival.

After Malone attempted mouth-to-mouth resuscitation, he walked around the rear of his car, picked up some car parts off the ground, and placed them in the back seat.  A witness at the scene, Kathy Villatoro ("Villatoro"), asked Malone if the car belonged to him, and he replied that it did.  When Malone got into the driver's seat, Villatoro asked him what he was doing.  Malone said he was moving his car out of the way.  Villatoro instructed Malone to move his car to a certain place and to stay there.

Malone was fumbling with his keys while placing them in the ignition, and then began driving the vehicle with the driver's side door open and his left arm and foot hanging out of the car.  He drove a short distance, stopped briefly, and then left the scene.  Malone's car was smoking as he drove away.

When Omaha Police Officer Stephen Venteicher ("Officer Venteicher") arrived on the scene moments later, several people told him that the driver of the car involved in the collision "just took off." Villatoro described the car and told Officer Venteicher the

direction Malone was headed.  Officer Venteicher activated his emergency lights and initiated a pursuit.

Officer Venteicher saw a white cloud of smoke in the air and followed its trail into a residential neighborhood.  He soon observed Malone's vehicle swerving down the road in front of him.  Officer Venteicher followed with his overhead lights and sirens activated.  Malone's vehicle slowed but did not stop.  Officer Venteicher then pulled up next to the driver's side door and yelled at Malone to pull over and stop.  Malone did not appear startled.  He slowly looked left toward Officer Venteicher, then slowly back to the right before he finally stopped.

When Officer Venteicher approached, Malone immediately said, "I just thought it would be best if I got my car home."  Officer Venteicher removed Malone from the car, placed him face down on the ground, and handcuffed him.  When Officer Venteicher requested identification, Malone said his license was in his wallet.  Officer Venteicher retrieved Malone's wallet and saw an ignition interlock permit.  The officer noticed the vehicle was not equipped with an ignition interlock device.

While Malone was still lying on the ground, he repeatedly stated, "[H]e just came out of nowhere.  I tried to help, but I just thought it would be best to get my car home."  Officer Venteicher helped Malone to his feet.

Officer Venteicher saw blood on Malone's hands, shirt, and chin, detected faint odor of alcohol on Malone's breath, and noticed his eyes were watery.  Malone stated the blood on his hands was from the motorcycle victim.  Officer Venteicher also noticed Malone's speech was slurred.

Officer Venteicher, a highly trained and experienced police officer, suspected Malone may be impaired.  Officer Venteicher asked Malone if he had been drinking. Malone admitted that he had consumed two beers earlier in the day.

4

Officer Venteicher administered a series of field sobriety tests to Malone. Although Malone correctly recited the alphabet, his speech was mumbled.  In addition, four out of six clues or indicators on the horizontal gaze nystagmus ("HGN") indicated impairment, Malone was unable to count backward from 92 to 78, he was unable to touch his nose with his fingertip, six of eight clues on the nine-step walk-and-turn indicated impairment, and Malone failed to follow instructions on the "Romberg" balance test. Malone also swayed slightly during both the finger-to-nose test and the balance test. Based on these observations, Officer Venteicher concluded Malone was under the influence and unable to safely operate a motor vehicle.

Shortly after Officer Venteicher finished administering the field sobriety tests, Omaha Police Officer Matthew Kelly ("Officer Kelly"), another highly trained and experienced police officer, arrived to assist Officer Venteicher.  In response to Officer Kelly's questioning, Malone stated he was taking a prescription drug called Celexa and had consumed two beers earlier in the day.  Officer Kelly repeated the HGN testing of Malone, observed the same four findings as Officer Venteicher, and concluded Malone may be under the influence of a central nervous system depressant ("CNSD"), an inhalant, or a dissociative anesthetic.  Malone was transported to Douglas County Corrections.

While at Douglas County Corrections, Malone performed a drug recognition examination ("DRE"), provided a urine sample, and submitted to a chemical breath test. The breath test was negative for alcohol.  In response to questioning, Malone said he was taking Celexa, and medications for high blood pressure and depression.  The DRE testing indicated several signs of impairment.  Malone's blood pressure and pulse rates were elevated, and his pupils were dilated.  His muscle tone and balance appeared normal. Officer Kelly concluded Malone was under the influence of a CNSD and cannabis, and he was impaired to an extent he was unable to safely operate a motor vehicle.  Based on

results received later from the Nebraska Crime Laboratory, Malone's urine was positive for four different CNSD's,[2] but negative for cannabinoids.

At trial, Officer Kelly testified that the presence of multiple drugs in a person's system can interact in ways that enhance impairment.  And in this case, Malone had not only four CNSD's in his urine, but he admitted to drinking alcohol, which is also a CNSD.

Malone was found guilty on all four counts.  (Filing No. 6-20, at CM/ECF pp. 39-40).  He was sentenced to a total of 40 to 50 years' imprisonment, and his driver's license was revoked for 15 years.  (Filing No. 6-20. at CM/ECF pp. 45-48).

### B.    Procedural History
#### 1.    Direct Appeal

On July 9, 2017, Malone timely filed a notice of appeal in accordance with Nebraska Revised Statute § 2-101.  Malone argued the convictions on Counts I and II were not supported by sufficient evidence, and the sentence was excessive.  (Filing No. 6-7, at CM/ECF p. 6).  After the appellate briefs were fully submitted but prior to any oral argument, Malone, acting pro se, sent a letter to the Douglas County District Court stating the trial transcript of his cross-examination by the prosecutor was incomplete.  On April 5, 2018, the trial court reporter promptly responded that she had "listened to the entire cross-examination by Mr. Lindberg of you and the Bill of Exceptions that you have is an accurate transcription of what was said in court on that day." (Filing No. 6-23, at CM/ECF p. 2).

Malone again complained that the bill of exceptions was incomplete.  The trial judge responded, "What has been prepared, submitted and certified as the bill of

---

[2]Identified as zolpidem (also known as Ambien), diphenhydramine (also known as Benadryl), clonazepam (also known as Klonopin), and citalopram (also known as Celexa).

exceptions by Ms. Bellamy is the entire record. . . [Y]our claim of missing testimony is unfounded and not accurate.  Nebraska Revised Statute 25-1906 has been complied with in full.   You have been provided with the bill of exceptions as requested." (Filing No. 6-21, at CM/ECF p. 6).

On July 2, 2018, Malone filed a pro se motion for writ of mandamus in the District Court of Douglas County, requesting a copy of the audio recording of the May 4, 2017 trial proceedings.  (Filing No. 6-23, at CM/ECF p. 5).

The Nebraska Court of Appeals affirmed Malone's conviction and sentence on July 24, 2018.  (Filing No. 6-4).

Malone retained new counsel, who filed a motion for further review by the Supreme Court on August 14, 2018.  (Filing No. 6-10).  The motion before the Supreme Court argued there was insufficient evidence to support the charges in Counts I and II, and the sentence was excessive.  It did not mention that the bill of exceptions was purportedly incomplete.  (Filing No. 6-11).  Malone's motion for further review was denied.

### 2.    State Post-Conviction Proceedings

#### a.    State Post-Conviction Motion—District Court of Douglas County

Malone filed a verified motion for post-conviction relief in the District Court of Douglas County on June 21, 2019.  (Filing No. 1-14).  He filed an amended motion for post-conviction relief on October 17, 2019, claiming prosecutorial misconduct, ineffective assistance of counsel at trial and on appeal, and "errors and omissions of the Bill of Exceptions preventing a proper appeal and unduly prejudicing the defendant." (Filing No. 1-1, at CM/ECF p. 4).  Malone summarized that "[a]ll of these errors, individually and in concert, so deprived Mr. Malone of his constitutional rights that they rendered the judgment void or voidable under the Constitution of this State and the

Constitution of the United States." (Filing No. 1-1, at CM/ECF p. 4, ¶ 7). Malone cited United States Supreme Court case law in support of his claims of ineffective assistance of defense counsel and prosecutorial misconduct, but as to the alleged incomplete bill of exceptions, he cited to only Nebraska statutes, and Nebraska cases interpreting Nebraska's Constitution and statutes. (Filing No. 1-1, at CM/ECF pp. 29-30, ¶¶ 71-75; Filing No. 6-21, at CM/ECF p. 48).

The Douglas County District Court denied Malone's petition for post-conviction relief on January 15, 2020, (Filing No. 6-21, at CM/ECF pp. 351-60), with an order Nunc Pro Tunc entered on January 28, 2020, adding that any outstanding motions not specifically addressed in the January 15, 2020 order were also denied.[3] (Filing No. 6-21, at CM/ECF p. 362).

### b.     State Post-Conviction Appeal—Nebraska Court of Appeals

Malone appealed the Douglas County District Court's post-conviction ruling. On April 21, 2020, his counsel filed an Application for Remand to Proceeding in District Court to Correct Bill of Exceptions, with supporting evidence. (Filing No. 1-3, at CM/ECF pp. 1-3). The Nebraska Court of Appeals responded with an order stating:

> Appellant's application to remand case to district court for purposes of correcting record is sustained in part. While case is not remanded to district court, this court does find pursuant to Neb. Ct. R. App. P. § 2 - 105(B) (5) that a hearing shall be held in the Douglas County District Court before the judge who presided over trial regarding appellant's application. Said hearing and ruling thereon by the district court shall take place within 30 days of the date of this order. Request to hold hearing in Lancaster County

---

[3]The outstanding motions, filed by Malone acting pro se, included a Motion for Audio Record Per Public Records Law and a Motion for Discovery Evidence: Sound Recordings, (Filing No. 6-21, at CM/ECF pp. 148-48) both of which requested the audio recording of Malone's trial testimony. He also filed two motions asking the trial judge to recuse herself due to apparent bias as evidenced by her failure to comply with Malone's demands to receive the audio recording. (Filing No. 6-21, at CM/ECF pp. 3-5, and 145-47).

overruled.  Appellant is directed to file copy of application filed herein with the Douglas County District Court within 5 days.  Notice of hearing to be provided to both trial and appellate counsel for the State[.]

(Filing No. 6-22, at CM/ECF p. 2).

### c.    Post-Conviction    Appeal—Trial    Court    Hearing    on Remand

The hearing on Malone's request to correct the bill of exceptions was held on June 8, 2020.  Malone, his sister, his son, and his daughter-in-law testified that portions of the prosecutor's cross-examination of Malone were missing; the trial prosecutor testified that he was not aware of anything missing from the official trial transcript.  The court received the affidavit of Malone's investigator and the affidavit of a court reporter who had replaced the court reporter for Malone's trial.  The court reporter affidavit stated she retrieved the prior court reporter's raw audio file, played it, compared it to the bill of exceptions prepared for appeal, and found the transcript of Malone's cross-examination was complete and accurate—nothing said at trial was omitted from the transcript.  (Filing No. 6-22, at CM/ECF pp. 34-35).

The trial judge held "there are no amendments to be made to the Bill of Exceptions." (Filing No. 6-22, at CM/ECF p. 32).[4]

---

[4]Malone filed a public records request to obtain the audio recording.  When this request was denied, he filed a petition for writ of mandamus.  An order was filed denying mandamus relief.  (Filing No. 6-31, at CM/ECF pp. 18-22).  Malone appealed.  The Supreme Court dismissed the appeal, finding the Douglas County District Court lacked subject matter jurisdiction because Malone "failed to file either a motion and affidavit or a verified petition as required by governing mandamus law." *State ex rel. Malone v. Baldonado-Bellamy*, 307 Neb. 549, 556 (Neb. 2020).   Since the district lacked jurisdiction, so did the Supreme Court, and the appeal was therefore dismissed.  Under these circumstances, the mandamus order of the Douglas County District Court is void.

### d.     Post-Conviction Appeal—Supreme Court

Malone again appealed on September 10, 2020.  (Filing No. 6-13).  The State filed a Petition to Bypass.  (Filing No. 6-16).  The Supreme Court granted the Petition to Bypass and consolidated Malone's two appeals.  Malone appealed the denial of every claim raised in the Amended Petition for Post-Conviction Relief; specifically, his claim that the bill of exceptions was incorrect, and his claims of ineffective assistance of counsel and prosecutorial misconduct.  After addressing each issue in its written opinion, the Supreme Court denied Malone's Petition for Post-Conviction Relief on April 16, 2021.  (Filing No. 6-5).  Malone moved for rehearing on April 26, 2021.  (Filing Nos. 6-18).  In response, the court entered a ruling on June 4, 2021, modifying a paragraph of its prior decision but nonetheless fully denying Malone's petition.  (Filing No. 6-6).

Malone timely filed his federal Petition for a Writ of Habeas Corpus by a Person in State Custody on November 9, 2021.  (Filing No. 1).

## II.     DISCUSSION

### A.     Legal Standard

A federal court can grant a state prisoner's petition for habeas corpus relief only if the prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." *Shinn v. Ramirez*, No. 20-1009, 2022 WL 1611786, at \*6 (U.S. May 23, 2022) (quoting 28 U.S.C. § 2254).  28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996).  AEDPA "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings.'" *Johnson v. Williams*, 568 U.S. 289, 298 (2013) (quoting 28 U.S.C. § 2254(d)).  A state prisoner seeking federal habeas relief faces the heavy burden of showing that the state-court ruling involved an unreasonable application of clearly established federal law or rested on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  *Madison v. Alabama*, 139 S. Ct. 718 (2019).  *See also Bell v. Cone*, 535 U.S. 685, 693 (2002) (explaining AEDPA "modified a federal habeas court's role in

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law").

In recognition of the duty and ability of state courts to adjudicate alleged constitutional violations (*Burt v. Titlow*, 571 U.S. 12, 15-16 (2013)), federal habeas review is generally limited to only those federal claims the state prisoner presented to the state court in accordance with state procedures.   A petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999).

Under Nebraska law, the prisoner must submit his claim in a petition for further review to the Supreme Court.   *Akins v. Kenney*, 410 F.3d 451, 455 (8th Cir. 2005).   To preserve a right to federal habeas review, the claim for post-conviction relief before the Supreme Court must notify that court that the prisoner is asserting violations of federal law by referring to "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) (quoting *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007)). Merely alerting a state court to a state issue that is similar to a federal issue is not sufficient.   *Turnage*, 606 F.3d at 936.

If the state prisoner has not raised a federal claim before the state court, and the state court would dismiss the claim on that basis, the claim is "procedurally defaulted." *Shinn*, 2022 WL 1611786, at *3.   Procedurally defaulted claims will not be reviewed by a federal court unless the prisoner demonstrates "cause" to excuse the procedural defect and "actual prejudice" if the federal court were to decline to hear his claim.   *Shinn,* v. 2022 WL 1611786, at *3.

A federal habeas court looks to the record of the state court that previously adjudicated a habeas petitioner's claim on its merits.   "[T]he standard to expand the state-

court record is a stringent one." *Shinn*, 2022 WL 1611786, at *3.  Discovery to acquire additional information is permitted only upon a showing of good cause.  Rules Governing § 2254 Cases, Rule 6 (a).  And the federal court cannot hold an evidentiary hearing on a claim not fully developed in the state proceedings unless the state prisoner demonstrates that the new evidence will establish his innocence "by clear and convincing evidence," (§ 2254(e)(2)(B)), and shows that his claim for relief is either: 1) governed by an applicable but previously unavailable rule of constitutional law, or 2) based on facts that could not have been previously discovered through the exercise of due diligence.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The petitioner bears the burden of meeting this highly challenging and deferential standard, thus affording state-court rulings the required benefit of the doubt.  *Id*. (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

"[T]he judge must review the answer, any transcripts and records of state-court proceedings, . . . to determine whether an evidentiary hearing is warranted."  Rule 8(a), Rules Governing Section 2254 Cases in the U.S. District Courts.  After examining the record, the Court finds that no evidentiary hearing is required.

### B.    Analysis

The claims raised in Malone's federal Petition for habeas relief, all of which were raised and addressed in the Supreme Court's decision, include:

1.    The bill of exceptions was incomplete, and the district court erred in finding it was not.

2.    Malone's trial and appellate counsel was ineffective in that he:

   a.    represented Malone while having a conflict of interest;

   b.    failed to adequately cross-examine Officer Kelly;

   c.    did not present evidence, to include the testimony of accident reconstruction expert witness Ted T. Sokol, Ph.D., P.E., to prove

12

Hart's death was caused by his improper handling of his motorcycle in response to the impending collision;

d.    failed to file pretrial motions to suppress Malone's toxicology report and chemical test;

e.    did not raise prosecutorial misconduct as a grounds for reversal on direct appeal; and

f.    did not move for a separate trial on Count IV.

### 1. Incomplete or Erroneous Bill of Exceptions

The Supreme Court rejected Malone's claim that the Douglas County District Court erred when it failed to amend the bill of exceptions. (Filing No. 1-9, at CM/ECF p. 11). The Supreme Court held that Malone did not comply with Neb. Ct. R. App. P. § 2-105(b)(5) when he moved to amend and obtain a complete bill of exceptions. Specifically, the court held that rather than filing his motion in the Douglas County District Court as required under Nebraska's appellate rules, Malone filed an application for remand in the Court of Appeals. Since Malone failed to strictly comply with Nebraska's rules of appellate procedure for amending a bill of exceptions, the court did not consider the merits of his claim that the bill of exceptions was incomplete.

In the state proceedings, Malone did not claim he was denied due process because the bill of exceptions was allegedly inaccurate and/or incomplete. As explained in the Supreme Court's opinion:

> Malone does not assign or specifically argue that the alleged misstatements in the bill of exceptions . . . violated his constitutional rights. At oral argument, Malone conceded that he was not raising such an argument on appeal, but that his argument concerning the bill of exceptions was limited to alleging that the district court had erred under § 2-105(B)(5) of the appellate rules of practice in declining to amend the bill of exceptions. . . . Because Malone did not specifically assign and argue that the alleged misstatements in the bill of exceptions violated his constitutional rights, we do not consider any such argument here.

(Filing No. 1-9, at CM/ECF p. 16).

On habeas review, this Court is tasked with deciding whether a state-court decision is "contrary to" clearly established United States Supreme Court precedent. *Bell*, 535 U.S. at 694. A federal habeas court will not consider whether a state court properly denied a prisoner's claim based on independent and adequate state law grounds. *Davila v. Davis*, 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017). Here, the Supreme Court denied Malone's claims regarding the purportedly incomplete or erroneous bill of exceptions solely on Nebraska procedural grounds. Since the Nebraska courts did not address any federal constitutional arguments for granting or denying post-conviction relief due to an incomplete trial transcript, this Court cannot conduct habeas review on that issue.

The Supreme Court denied Malone's claims related to the incomplete bill of exceptions after interpreting its own rules of appellate procedure and concluding Malone failed to comply with those rules. This Court has no authority to consider, much less disagree with the Supreme Court's decision based on this purely state law issue.

Moreover, Malone has filed a motion for discovery of the audio recording of his testimony at the state trial, (Filing No. 11), and in that motion, he argues:

> Petitioner was denied Due Process of Law guaranteed by the 5th and 14th Amendment of the United States Constitution in that he was denied the opportunity to ensure that his Bill of Exceptions was accurate by reviewing trial audio in that the District Court denied his request for trial audio by relying on the affidavit of the then court reporter, despite the Petitioner's witnesses' testimony.

(Filing No. 11, at CM/ECF p. 2, ¶ 9). But he raised no federal constitutional argument regarding his incomplete bill of exceptions in his habeas Petition.

Malone's motion for discovery argues his due process rights were violated when the Douglas County District Court decided the bill of exceptions was complete based on the affidavit of a court reporter who was not subject to cross-examination. This

constitutional argument was not, but could have been, raised before the Supreme Court, and it could have been mentioned in the Petition before this Court.  Having failed to raise a federal claim regarding the bill of exceptions before the Supreme Court, Malone is procedurally defaulted from raising it on habeas review.  He cannot raise or resurrect procedurally defaulted claims by including a constitutional argument in a motion for discovery.[5]

### 2.   Ineffective Assistance of Counsel

To sustain an ineffective assistance of counsel claim, Malone must show: 1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997).  A "reasonable probability" is less than more likely than not.  It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  It "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

Malone raises six claims of ineffective assistance, each of which are addressed below.

### a.   Existence of a Conflict of interest

---

[5]Malone had the same attorney for his appeal and trial, different counsel for his state post-conviction proceedings, and new counsel for this federal habeas Petition. Based on the record, Malone could argue that his post-conviction counsel failed to strictly follow Nebraska appellate court rules when requesting for a corrected bill of exceptions and did not raise federal constitutional arguments regarding the alleged incorrect bill of exceptions before the Supreme Court.  If Malone is seeking the audio file to prove his ineffective state post-conviction counsel was the "cause" of his procedural default, his request for discovery must nonetheless be denied.  This court cannot expand the record to address whether possible errors by Malone's post-conviction counsel provide sufficient "cause" to consider Malone's otherwise procedurally defaulted claims. *Shinn v. Ramirez*, No. 20-1009, 2022 WL 1611786, at *6 (U.S. May 23, 2022).

Malone states his trial counsel was Hart's cousin and accepted a $25,000 retainer to represent Malone without disclosing the conflict. Malone claims that he received notice of the conflict three months after the case began, and he did not knowingly and voluntarily waive it. (Filing No. 1, at CM/ECF pp. 9-13). He claims the conflict of interest deprived him of his Sixth Amendment right to effective assistance of counsel. (Filing No. 1, at CM/ECF p. 10).

On November 10, 2016, nearly six months prior to trial, the following discussion occurred in a hearing before the state trial judge.

| | |
|---|---|
| DEFENSE COUNSEL: | During the course of this case I was notified by a second cousin of mine by the name of Daniel McGinn, that Mr. Hart is actually the son of what may be a second, third, or fourth cousin of mine. I have never met Mr. Hart. I have never met his mother. And the cousin that called me has -- I haven't heard from him or spoken with him in at least 15 years, but I just wanted it on the record that I discussed that with Mr. Malone and his family and they know of that relationship, but I don't see that that would affect my representation of Mr. Malone in any way, shape, or form. |
| THE COURT: | Is that accurate, Mr. Malone, that you've discussed this with Mr. McGinn? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | And you don't have any issue? |
| THE DEFENDANT: | No, ma'am. |

(Filing No. 6-26, at CM/ECF pp. 5-6). After considering the law and these facts of record, the Supreme Court denied any claim of ineffective counsel due to this familial relationship. It reasoned that a personal interest conflict is "arguably the least consequential type of conflict that we recognize," because an attorney who has a personal conflict can still fulfill his or her duty of loyalty to a client. *Malone*, 957 N.W.2d at 912.

The court concluded no actual conflict existed because in this case, the familial relationship was distant, the attorney had never met Hart and did not expect the relationship would affect his representation of Malone, and there was nothing in the record suggesting Malone's attorney felt any loyalty to Hart or to Hart's immediate family.  "We see no basis for finding that the attorney's familial relationship led him to disregard his representation of Malone."  *State v. Malone*, 957 N.W.2d at 913.

To establish a conflict of interest sufficient to support a Sixth Amendment claim of ineffective assistance of counsel, a habeas petitioner must prove an actual conflict existed—a conflict of interest that adversely affected counsel's performance as opposed to a mere theoretical division of loyalties.  *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).  Here, the Supreme Court held no actual conflict existed.  This conclusion was consistent with United States Supreme Court law, and it was based on a reasonable interpretation of the facts of record.  Malone's claim for habeas relief arising from his counsel's alleged conflict of interest is denied.

### b.    Inadequate Cross-Examination of Officer Kelly

Malone claims his trial counsel failed to adequately cross-examine Officer Kelly.  He argues that if defense counsel had "cross-examined and impeached Officer Kelly for his inconsistencies, the jury would have found that Malone was not impaired." (Filing No. 1, at CM/ECF p. 15).  Failure to impeach a witness with a prior inconsistent statement is not per se ineffective assistance of counsel.  *See Hall v. Luebbers*, 296 F.3d 685, 695-96 (8th Cir. 2002); *see also United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006).  However, if the prejudice caused by the failure to impeach or otherwise question a witness meets the two prongs of the Strickland test, it may support a successful claim of ineffective assistance of counsel.  *See Steinkuehler v. Meschner*, 176 F.3d 441, 444-46 (8th Cir. 1999).

Malone's post-conviction briefing to the Supreme Court states that "[w]ith a full understanding of Officer Kelly's conflicting, inconsistent testimony, the faults with the

DRE exam conducted on Mr. Malone, and the faults with the urinalysis, a jury would be unlikely to conclude that the exams and tests were conducted properly and unlikely to believe the exams and tests were accurate." (Filing No. 6-13, at CM/ECF p. 32). However, the briefing does not identify the alleged inconsistent testimony with any specificity, and it does not identify what alleged faults in the DRE examination or the urinalysis should have been raised. Since Malone failed to identify what cross-examination questions should have been asked and how the responses would have assisted his defense, the Supreme Court denied the claim for failure to adequately raise it in his post-conviction briefing. *Malone*, 957 N.W.2d at 916 (citing *State v. Custer*, 298 Neb. 279, 288, 903 N.W.2d 911, 921 (2017)).

Malone's habeas petition attempts to remedy the Supreme Court's concerns by identifying facts and inconsistencies that should have been raised on cross-examination. Even assuming Malone is not procedurally defaulted from raising his inadequate cross-examination claims on federal habeas review, Malone's ineffective cross-examination claim must nonetheless be denied.

Malone argues Officer Kelly provided internally inconsistent testimony when he stated Malone's pulse readings were elevated and his pupils were dilated—testimony which provided the basis for the officer's opinion that Malone was an impaired driver at the time of the accident. As reflected in the record, Officer Kelly testified that Malone's pupils were substantially dilated at room light, at the high end of the normal range in darkness, and his pupil size fluctuated to the upper limit of normal when in direct light. (BOE 638:5-19, at CM/ECF p. 6-21, at CM/ECF p. 141). Officer Kelly also testified that during his DRE examination of Malone, Malone's pulse readings were 88, 90, and 90, which is "toward the elevated range." (BOE 638:24-25, Filing No. 6-27, at CM/ECF p. 141). While Malone characterizes this testimony as fraught with inconsistencies, the court disagrees. More importantly, since any inconsistencies were minimal at most, they

would have provided little, if any, support for impeaching the officer during cross-examination.[6]

Malone also claims his trial counsel did not cross-examine Officer Kelly regarding the officer's post-accident assessment that Malone was impaired due to his use of marijuana, hallucinogens, and stimulants—an assessment that was later contradicted by laboratory testing.  But while Malone's counsel did not cross-examine Officer Kelly on this issue, he did elicit testimony which contradicted Officer Kelly's during the cross-examination of the government's next witness, Brad Rutledge, a forensic scientist for the Nebraska State Patrol ("NSP").  On cross-examination by defense counsel, Rutledge testified that contrary to Officer Kelly's DRE assessment, laboratory testing proved Malone was negative for the use of cannabinoids.  (BOE 689:4-20, Filing No. 6-27, at CM/ECF p. 192).

Malone claims Officer Kelly testified that central nervous system depressants decrease the pulse rate, then later testified that they increase that rate.  He claims Officer Kelly should have been cross-examined to emphasize these inconsistencies and thereby impeach the officer's testimony.  But in the testimony cited by Malone, Officer Kelly testified that "pulses normally could be down" when a person takes central nervous system depressants, (BOE 594:19), Filing No. 6-27, at CM/ECF p. 97), but "some antidepressants . . . can cause dilated pupils or raised—elevated pulse rate." (BOE 695:12-20, Filing No. 6-27, at CM/ECF p. 198).  The cited statements compare apples and oranges: "Antidepressant" and "CNS depressant" are not synonyms.  Read correctly, Officer Kelly testified that a CNS depressant, such as marijuana and alcohol, will

---

[6]In addition, Malone's trial counsel did cross-examine Officer Kelly regarding Malone's elevated pulse, eliciting Officer Kelly's admission that the anxiety and stress of the circumstances can cause elevated pulse readings.  (BOE 658:20-24, Filing No. 6-27, at CM/ECF p. 161).

generally lower pulse rates, while some antidepressants increase those rates.   This testimony provides no basis for cross-examination.

Malone argues his attorney failed to cross-examine Officer Kelly's statement that Malone had taken multiple antidepressants, "when the urinalysis revealed that Malone had only taken one."  Malone misstates the record.  In the cited portions of the record, (BOE 615:10-20, 647:9-10, Filing No. 6-27, at CM/ECF pp. 118, 150), Officer Kelly testified that Malone <u>said</u> he had taken only Celexa and drank a beer.  But consistent with Officer Kelly's DRE findings, the urinalysis report from NSP revealed Malone had taken four different central system depressants: Zolpidem, diphenhydramine, citalopram, and clonazepam, (BOE Ex. 72, Filing No. 6-29, at CM/ECF p. 57).

Upon review of the record, the Supreme Court held that "Malone's allegations of factual misstatements in Officer Kelly's testimony [were] largely unfounded." *Malone*, 957 N.W.2d at 916.  On habeas review, this Court finds this assessment of the facts was not unreasonable.

### c.    Hart's Own Conduct Caused His Death

Malone faults his trial attorney for failing to present evidence, including expert testimony, that Hart would not have died if he had applied the brakes rather than "laid down" his bike as he approached the intersection and impending collision.   Malone claims Hart's death was caused by Hart's driving, not Malone's, and therefore Malone cannot be guilty of motor vehicle homicide.  (Filing No. 1, at CM/ECF pp. 15-18).

The Supreme Court rejected this argument, holding "[c]riminal conduct is a proximate cause of the event in question if the event would not have occurred but for that conduct." *Malone*, 957 N.W.2d at 915 (citing *State v. Irish*, 292 Neb. 513, 521, 873 N.W.2d 161, 168 (2016)).   Applying Nebraska law, the court held that Hart was responding to an imminent, life-threatening danger precipitated by Malone's act of

turning left on a red light, and therefore Malone's driving was a proximate cause of Hart's death. *Malone*, 957 N.W.2d at 915.

The Supreme Court's holding was based on independent and adequate state law grounds and not a federal constitutional analysis. And even assuming Malone's trial counsel could have introduced evidence that Hart's response to the imminent collision caused his own death, choosing not to blame the victim for his death was certainly within the ambit of effective and reasonable trial strategy.

### d.      Failure to Move to Suppress the Chemical and Toxicology Report

Malone argues his counsel should have moved to suppress the chemical and toxicology reports conducted on his post-accident urine sample. He claims the testing results were inadmissible under Nebraska law, and his counsel's failure to move to suppress such evidence violated his Sixth Amendment right to effective assistance of counsel.

Applying solely Nebraska law, the Supreme Court held the test results were admissible even though cutoff levels were not reported with the results. It further held that Malone produced no evidence supporting his claim that quality control standards were not followed during the testing.

The Supreme Court's decision was based on its interpretation of Nebraska drug test reporting statutes and the facts (or lack thereof) within the court record. Therefore, this Court cannot grant habeas relief on Malone's claim that his counsel was ineffective for failing to move to exclude the testing results.

### e.      Failure to Move to Sever Count IV

Count IV of the charges against Malone alleged he failed to use an interlock device before driving. Malone claims evidence supporting this count, including a stipulation regarding the lack of an interlock device, notified the jury that Malone had a

history of driving under the influence, and the jury would not have heard this inadmissible "prior bad acts" evidence had Count IV been bifurcated.

The Supreme Court rejected Malone's bifurcation argument, explaining the facts underlying Count IV arose from the same accident as those underlying Counts I, II, and III, and even if raised, a motion to sever may not have been granted. It also noted that by using the stipulation, the jury did not hear the full history underlying the interlock device order; the fact that Malone had three prior DUI convictions.

The Supreme Court's decision is not based on an unreasonable interpretation of federal law or the factual record. It is based partly on its interpretation of state procedural law and partly on acknowledging a defense trial strategy that limited the prior DUI evidence heard by the jury. This ruling will not be set aside on federal habeas review.

### f.     Failure to Raise Prosecutorial Misconduct at Trial or on Direct Appeal

Malone claims the prosecutor misstated evidence in oral arguments, withheld potentially exculpatory evidence, and inflamed the jury by shouting at Malone and characterizing Malone's version of the events as "ridiculous" and fabricated. He argues his attorney failed to properly object to the prosecutor's conduct and failed to raise the issue on direct appeal. A petitioner alleging ineffective appellate counsel must show that "there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made." *Carter v. Bowersox*, 265 F.3d 705, 713-14 (8th Cir. 2001) (quoting *Chambers v. Bowersox*, 157 F.3d 560, 566 (8th Cir.1998)).

Malone briefly mentions that the prosecutor withheld Malone's bloody shirt, and that shirt was exculpatory evidence because it would have refuted any claim that Malone failed to assist Hart following the accident. (Filing No. 1, at CM/ECF p. 22). But Malone's bloody shirt and the source of that blood was mentioned by Malone's counsel during his opening statement, (BOE 183:2-10, Filing No. 6-25, at CM/ECF p. 183), and during the testimony of several witnesses. BOE 372:3-5, 6-36, at CM/ECF p. 131; BOE

523:10-23, Filing No. 6-27, at CM/ECF p. 27; BOE 658:15-19, Filing No. 6-27, at CM/ECF p. 161; BOE 742:13-25, (Filing No. 6-27, at CM/ECF p. 245). As the Supreme Court held, based on the record, Malone cannot claim his bloody shirt was not disclosed, or that any alleged nondisclosure was prejudicial.

Malone claims the prosecutor's statements and arguments to the jury were not supported by the record and were made with the intent of inciting a verdict based on emotion rather than facts. He claims the prosecutor gave the jury the false impression that Malone ran the red light at full speed, that Malone did not render assistance at the accident scene, did not acknowledge he was the driver of the vehicle, and instead picked up parts of his car strewn on the roadway, placed them in his car and drove away. Malone claims the prosecutor presented this false narrative during the opening statement, his cross-examination of Malone, and in the closing statement.

The Supreme Court rejected this argument, stating there were facts of record to support the prosecutor's arguments and inferences. *Malone*, 957 N.W.2d at 921. As such, no prosecutorial misconduct occurred, and Malone's trial counsel was not ineffective for failing to object at trial or raise the argument on direct appeal.

Upon review of the record, this Court finds the Supreme Court's post-conviction ruling was not based on an unreasonable interpretation of the facts.[7] Federal habeas relief

---

[7]Compare, BOE 160:12-16, 166:1-6, 175:23-176:7, 177:9-11, (Filing No. 6-25, at CM/ECF p. 160, 166, 175, 176, 177) (opening argument excerpts) and BOE 804:8-807:25, (Filing No. 6-28, at CM/ECF p. 54-58) (closing statement excerpts) with the testimony excerpts at BOE 220:4-221:6, 237:7-238:20, 274:21-275:7, 286:6-287:4, 289:5-8, 290:16-22, 292:23-293:23, 300:17, 301:9-21, 313:3-21, 325:10-22, 363:23-364:6, 366:13-368:7, 372:2-5, 372:21-23, 759:6-762:23 (Filing No. 6-25, at CM/ECF p. 220-21, Filing No. 6-26, at CM/ECF pp. 33-34, 45-46, 48-49, 51-52, 59-60, 72, 84, 122-23, 125-127, 131, (Filing No. 6-28, at CM/ECF p. 9-13).

Malone claims the bill of exceptions is incomplete and fails to reflect some portions of the prosecutor's misconduct. For the reasons previously stated, the court will not allow

cannot be granted on Malone's claim that his trial counsel was ineffective because he failed to raise prosecutorial misconduct as grounds for reversal on direct appeal.

### 3.      Certificate of Appealability

"[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). Before he can take an appeal, the petitioner must have a certificate of appealability ("COA"). *Id*. at 336; Fed. R. App. P. 22(b). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v.*

---

discovery and expansion of the state court record. Moreover, there are no facts in the record to support a claim that during his cross-examination of Malone, the prosecutor "entered the witness stand and got in Malone's face." (Filing No. 1, at CM/ECF p. 22).

And even assuming the transcript is incomplete, the additional excerpts as described by Malone would not provide a basis for concluding Malone's trial counsel was ineffective by failing to raise prosecutorial misconduct at trial or on direct appeal. See Filing Nos. 1-3 and 6-30). *See Stephens v. Wyrick*, 659 F.2d 94 (8th Cir. 1981) (holding a complete transcript is unnecessary if the missing portion is not relevant to the issue raised and its outcome). *See also*, *Higginbotham v. Louisiana*, 817 F.3d 217 (5th Cir. 2016) (holding an incomplete trial transcript does not violate the due process clause if the portions available are sufficient to address the alleged errors; claims based on incomplete transcripts must show the absence of such a transcript prejudiced the defendant's appeal); *Fahy v. Horn*, 516 F.3d 169, 190-91 (3d Cir.2008) (holding incomplete transcripts on direct appeal constitute a due process violation only where a defendant can show a "colorable need" for a complete transcript); *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986) ("[I]n order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcripts."); *U. S. ex rel. Burton v. Greer*, 643 F.2d 466 (7th Cir. 1981) (holding the defendant was not denied the right of effective appeal by the absence of transcript testimony that was not germane to an appealed issue).

*McDaniel*, 529 U.S. 473, 484 (2000).  Having carefully reviewed the record in this case, the Court concludes Malone has not made that showing.  No COA will issue.

Based on the foregoing,

IT IS ORDERED:

1.     Petitioner Kevin W. Malone's motion for discovery (Filing No. 11) is denied.

2.     Petitioner Kevin W. Malone's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Filing No. 1) is denied.

3.     This case is dismissed with prejudice.

4.     No certificate of appealability shall issue.

5.     A separate judgment shall be entered in this case.

Dated this 24th day of June 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

25